UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NORMAN D. BROEKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-2147-SNLJ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Norman Broeker's applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. Broeker now seeks judicial review. (#18.) The Commissioner opposes the motion (#23), and the issue is ripe. The Commissioner's decision is supported by substantial evidence on the record as a whole and is, therefore, affirmed.

I. **Procedural History**

Broeker's application was denied at the initial determination level. He then appeared before an Administrative Law Judge ("ALJ"). The ALJ found that Broeker is not disabled because he can perform work that exists in substantial numbers in the national economy. Broeker then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration. The Appeals Council denied the

1

request. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. § 404.981, 416.1481. Broeker now appeals that decision.

## II. Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental

ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence relating to his RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3), 416.945(a)(3). If the claimant retains the RFC to perform past relevant work, he or she is not disabled. *Id.* § 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show that the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

**III.    The ALJ's Decision**

At Step One, the ALJ found that Broeker met the insured status requirements through March 31, 2018, and had not engaged in substantial gainful activity since March 26, 2013, the alleged onset date. At Step Two, the ALJ found that Broeker suffers from three severe physical impairments: (1) coronary artery disease, (2) degenerative disc disease of the lumbar and cervical spine, and (3) degenerative joint disease with status post-left ankle and right knee replacement surgeries. At Step Three, the ALJ concluded Broeker does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations.

Next, in beginning the analysis of Step Four, the ALJ determined Broeker's RFC.[1] He found that Broeker

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he cannot climb ladders, ropes, or scaffolds and can only occasionally climb stairs and ramps. The claimant can occasionally stoop, kneel, crouch, and crawl. He must avoid exposure to hazards such as unprotected heights and moving and dangerous machinery. He must avoid concentrated exposure to temperate extremes. In addition, the claimant must change position every 45 minutes for a few minutes at a time while remaining at the workstation.

(Tr. 15.) As part of this determination, the ALJ found that Broeker's allegations about his symptoms' intensity, persistence, duration, and impact on functioning are unsupported by the totality of the evidence. The ALJ noted that Broeker's activities of daily living are inconsistent with his allegations of disabling symptoms and limitations. Nor had any treating physician placed any specific long-term work-related restrictions on Broeker that were more restrictive than those the ALJ found in Broeker's RFC. Finally, the ALJ explained that none of Broeker's outpatient records support the types of functional limitations Broeker alleged.

With an RFC determination in hand, the ALJ continued on through Step Four to determine whether Broeker can perform his past relevant work given his designated RFC. The ALJ determined that Broeker cannot perform any past relevant work. This determination is consistent with testimony given by the vocational expert ("VE").

---

[1] In the past, there has been some confusion as to when the RFC is determined, which affects who holds the burden of proof in establishing an appropriate RFC. In this Circuit, it has been held that "the RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (*quoting Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000)).

At Step Five, the ALJ analyzed whether Broeker can successfully adjust to other work. He noted that if Broeker had the RFC to perform the full range of sedentary work—in other words, if Broeker's RFC matched perfectly with the sedentary work Medical-Vocational Guidelines—then the Medical-Vocational Guidelines would direct a finding of not disabled; however, in his view, additional limitations impede Broeker's ability to perform all or substantially all of the sedentary work requirements. Thus, the ALJ relied on VE testimony to determine the extent to which these limitations erode Broeker's occupational base to perform unskilled sedentary work. The VE testified that Broeker is able to perform work as a circuit board screener, assembler, and semi-conducted bonder, even after considering all of the limitations in Broeker's RFC. The ALJ then found that these jobs exist in significant numbers in the national economy and concluded Broeker is not disabled.

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is

substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992).

## V. Discussion

Broeker makes three arguments in his brief. Two relate to his RFC, while one deals with the Medical-Vocational Gridlines.

### A. RFC

Broeker argues the ALJ's RFC finding is not supported by substantial evidence. First, he claims the ALJ failed to fully and fairly develop the record because the ALJ neither obtained nor consulted a medical opinion pertaining specifically to Broeker's RFC. Second, Broeker argues the evidence supports a more limited RFC than the one the ALJ found.

#### 1. Broeker's RFC Need Not Be Supported by a <u>Specific</u> Medical Opinion

The ALJ must fully and fairly develop the record during social security hearings. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). That said, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (*quoting Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—

7

not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." Boyd v. Colvin, 831F.3d 1015, 1020 (8th Cir. 2016).

Citing *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), Broeker argues "the absence of a medical opinion in this case requires remand." (#18 at 4.) In his view, "[t]he ALJ should have solicited the opinion from a [consultative examiner] or a medical expert to determine the combine effects" of Broeker's conditions and symptoms, less the ALJ erroneously succumb to the temptation to "play doctor." (#18 at 4–5.). Broeker claims "the only way the ALJ could have fairly determined the RFC in this case was to obtain a medical opinion." (#18 at 5.).

*Nevland* is inapposite for a number of reasons. Foremost, that case involved an ALJ who relied upon the opinions of non-treating, non-examining physicians in determining the claimant's RFC. *See Nevland*, 204 F.3d at 858. In addition, the claimant initially provided medical evidence that documented his limited functional capabilities. *Id*. at 857-58. That is not the case here. The ALJ had the benefit of, and consulted, hundreds of pages of medical records from treating physicians. (Tr. 16-19). Moreover, this Court is unable to find a single instance in the medical records whereby a treating physician ever recommended or placed Broeker on long-term, functional restrictions.

*Nevland* also cannot stand for Broeker's asserted position—that a specific medical opinion is necessary in determining a claimant's RFC, either in relation to past relevant work at Step Four or other jobs in the national economy at Step Five—in light of the recent 2016 opinion of *Hensley v. Colvin*, 829 F.3d 926 (8th Cir. 2016). In *Hensley*, the

8

claimant similarly argued that "reversal is warranted because no medical opinion supports the ALJ's RFC determination" and "the ALJ failed to order a consultative examination ('CE') to correct this lack of direct opinion evidence." *Id*. At 932. But, the Eighth Circuit disagreed, finding "there is no requirement that an RFC finding be supported by a *specific* medical opinion." *Id*. (emphasis added). Rather, it was found that treatment records were extensive enough, taken as a whole, that they could "provide affirmative medical evidence supporting the ALJ's residual functional capacity findings" without the need to order a CE. *Id*.

Having reviewed the record, this Court finds it was sufficiently extensive so as to fall under *Hensley*. The ALJ had the benefit of hundreds of pages of medical records from treating physicians thoroughly explaining their medical impressions and diagnoses of Broeker's conditions. In several instances, to be further discussed below, these physicians appear to question the objective severity of Broeker's symptoms despite his subjective allegations of disabling pain; none recommended, or for that matter suggested, any at long-term functional limitations. While Broeker may have desired disability, the ALJ had a sufficient evidentiary basis for which to reach the conclusion that Broeker's RFC permitted sedentary work.

### 2. The ALJ's Specific RFC Determination Is Supported by Substantial Evidence

The evidence in the record does not compel a result different than what was found by the ALJ. Broeker was given an RFC which limits him to sedentary work, while he

9

seeks a conclusion that he is outright disabled. The record, however, simply does not support that conclusion.

Foremost, the ALJ was mindful to consider Broeker's self-admitted daily activities: he cuts the grass. (Tr. 202, 218, 229); he buys his own groceries (Tr. 203, 219); he occasionally plays guitar (Tr. 231); he drives himself to the places he needs to go (Tr. 37, 203, 219, 230); he performs light household chores, which in some cases take "all day long" (Tr. 202, 229); he helps take care of an elderly man he lives with (Tr. 35, 200, 227); and he is able to sit for prolonged periods of time. (Tr. 65, 217, 227). The ALJ was within his discretion to discount Broeker's subjective complaints of disabling pain given this competing evidence.

Moreover, as to the objective medical evidence, the ALJ noted no treating physician had ever placed any specific long-term, work-related restrictions on Broeker, nor did any treating physician place restrictions more restrictive than those found in the ALJ's decision. (Tr. 19). In fact, on several occasions, treating medical professionals appear skeptical of Broeker's subjective complaints. A nurse practitioner noted Broeker, despite indicating he had "excruciating pain," was "eating pizza and calmly watching television" upon her entry into the room. It was only after that point that Broeker began "to grimace and writhe in bed and ask[ed the nurse] to leave because he [was] in too much pain to talk." (Tr. 523). Another healthcare provider, who was attempting to treat Broeker's symptoms with pain medication, noted frustration over Broeker's refusal to seek a surgical consult over a two-month-long period despite being provided a list of references; the provider indicated she did not want to see Broeker again until he obtained

10

a consult. (Tr. 388-393). One doctor commented Broeker's "pain seems out of proportions to findings." (Tr. 1015). And another noted that, despite having a subjective pain severity of 9-out-of-10, "he has tried nothing for his symptoms." (Tr. 282). The remainder of the record mostly indicates "mild" medical conditions with comments that Broeker was in no immediate distress at the time he presented for treatment. (e.g., Tr. 264, 297, 312-313, 323, 349-350, 364, 388, 1015-16)

In reviewing the ALJ's decision, it is this Court's function to determine whether the ALJ's conclusions are supported by substantial evidence—even if different conclusions may be drawn from the evidence, and even if this Court may have itself reached a different outcome. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Certainly, the record, taken as a whole, indicates the ALJ's decision to provide Broeker with a RFC for sedentary work was supported by substantial evidence. The fact that no treating physician has ever suggested Broeker is disabled or unable to perform work, that Broeker's is still capable of handling meaningful day-to-day activities, and that a number of treating medical professionals were skeptical of Broeker's subjective allegations is enough to find that the ALJ's decision was grounded in substantial evidence. *See Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (in considering whether substantial evidence supported the ALJ's opinion as to claimant's RFC, for which it was found that claimant possessed the RFC to work full-time, the Court noted it was significant both that no physician who examined claimant submitted a medical conclusion that claimant was disabled or unable to perform any type of work and that claimant continued to cook,

clean, do laundry, shop, study foreign languages, exercise, and function as the primary caretaker of two children). This Court will not disturb the ALJ's decision.

### B. Medical-Vocational Gridlines

Turning to Broeker's third argument, he asserts the Appeals Council of the Social Security Administration erred when it failed to appropriately apply the Medical-Vocational Guidelines (or "Grids")—a set of "fact-specific generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 2. Specifically, Broeker argues that he entered into a different age category under the Grids (from a "younger person" to a "person closely approaching advanced age") between the time of the ALJ's decision on June 28, 2016, and the Appeals Council's decision on May 30, 2017, which would have resulted in Broeker being declared disabled under Grids Rule 201.10. See 20 C.F.R. § 404.1563(c), (d) (delineating between those under the age of 50 to be a "younger person" and those between the ages of 50 and 54 to be a "person closely approaching advanced age"); 20 C.F.R. Part 404, Subpt. P, App'x 2, § 201.10 (indicating a person "closely approaching advanced age," with "limited or less" education, being "skilled or semi-skilled" in previous work experiences that are non-transferable, should result in a finding of "disabled").[2] In support of his argument, Broeker points to a statement by the Appeals Council in its decision where it was said

---

[2] Broeker states that he turned fifty years old on February 23, 2017. (#18 at 10). Various medical records further indicate his birthday is February 23.

"we applied the laws, regulations and rulings in effect as of the date we took this action." (#18 at 11 (citing Tr. 1)).

Broeker appears to misunderstand the nature and effect of the Appeals Council's denial, and as such his argument must fail. When the Appeals Council denies a request for review, as it did here, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 416.1481; *Harvey v. Colvin*, 839 F.3d 714, 715 (8th Cir. 2016) (finding the ALJ's decision "is the final agency action when the Appeals Council denies review"). Therefore, in the event of a denial, it is age of the claimant at the time of the ALJ's decision—not the Appeals Council's denial—which governs for purposes of determinations under the Grids. *See Bryan v. Halter*, 252 F.3d 1357 (5th Cir. 2001); *Rhodes v. Chater*, 121 F.3d 709 (6th Cir. 1997). Indeed, Broeker points to no authority in support of his view that the Appeals Council, even if it is inclined to deny a request for review, must nonetheless accept review (and reverse the decision by the ALJ) simply because the time it took to review the ALJ's decision dictates a different result under the Grids. This, if it were allowed, would not be an effort to review any perceived legal error by the ALJ (as would fall under the permitted purposes of appellate review under 20 C.F.R. §§ 404.970(a) and 416.1470(a)), but instead would constitute a simple windfall to claimants who benefit merely as a result of the delay necessary to meaningful appellate review of an ALJ's findings and conclusions. The Court cannot agree with Broeker's that the Appeals Council erred when it did not consider Broeker's birthday on February 23, 2017, as part of its denial decision.

Relatedly, though this Court does not read Broeker's argument to mean that he fell in a "borderline" category under 20 C.F.R. §§ 404.1563(b) and 416.963(b), to the extent such an argument is being made it must also fail. Under these sections, "If [claimant is] *within a few days to a few months* of reaching an older age category, and using the older age category would result in a determination or decision that [claimant is] disabled, [the Social Security Administration] will consider whether to use the older age category after evaluating the overall impact of all the factors of [claimant's] case." *Id.* (emphasis added). Because it is the ALJ's decision—and not the Appeals Council's denial—which controls for purposes of determining age-related factors under the Grids, it cannot be said that Broeker fell within a "borderline" category. At the time of the ALJ's decision, Broeker was 7 months and 26 days removed from turning fifty years old. A nearly eight-month span is insufficient to find that Broeker was a so-called "borderline" case. *See Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012) (finding claimant's age was not borderline where, at the time the ALJ issued a decision, claimant was almost eight months away from his next birthday).

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's findings were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is affirmed.

So ordered this 13th day of August 2018.

                                                                          /s/ Stephen N. Limbaugh, Jr.
                                                        STEPHEN N. LIMBAUGH, JR.
                                                        UNITED STATES DISTRICT JUDGE